JUDGE SCHEINDLIN

15 CV 02764

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rodney Smith,<br><br>            Plaintiff,<br><br>-against-<br><br>Jamel Hairston, Christopher Heredia, Undercover Number 39, John Doe,<br><br>            Defendants | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |



RECEIVED APR 09 2015 U.S.D.C. S.D. N.Y. CASHIERS

## PRELIMINARY STATEMENT

1. This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the defendants' commissions of acts under color of law in violation of the plaintiff's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution.

## JURISDICTION

2. This action arises under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

5. The plaintiff demands a trial by jury on each and every one of his claims as

pled herein.

## PARTIES

6. Plaintiff Rodney Smith is a resident of the State of New York.

7. At all relevant times herein, defendants Jamel Hairston ("Detective Hairston"), Christopher Heredia ("Detective Heredia"), Undercover Number 39 ("UC 39") and John Doe were employed by the New York City Police Department ("NYPD") and were each acting in the capacity of agent, servant, and employee of the City of New York (the "City").

8. At all times relevant herein, Detective Hairston had shield number 303. He was the arresting officer of Mr. Smith.

9. At all times relevant herein, Detective Heredia had shield number 1339.

10. Plaintiff is unable to determine the actual name of John Doe and thus sues him under a fictitious name.

11. At all times relevant herein, the defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The defendants were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

12. The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

13.     At approximately 1:19 PM of May 29, 2014, plaintiff Rodney Smith was standing on the corner of Adam Clayton Powell Jr. Boulevard and West 116th Street, outside of the New Way Gourmet Deli (the "Deli"), which fronts at 1902 Adam Clayton Powell Jr. Boulevard.

14.     He was approached by one of the defendants herein, an NYPD detective wearing a windbreaker and a baseball cap. A second NYPD detective wearing a tee shirt and no hat, also a defendant herein, walked past Mr. Smith toward the front entrance of the Deli. On information and belief, one of these detectives was Detective Hairston.

15.     Mr. Smith had been standing in the vicinity of the Deli, enjoying the spring weather, for a few hours. At the time he was approached by the detective in the cap, Mr. Smith was talking on his cell phone. Approximately a minute and a half prior to that he had just parted company with a gentlemen by the name of Ridgely Wilson, with whom he had been talking near the front entrance of the Deli.

16.     The detective in the cap asked Mr. Smith if his name was Frank James. When Mr. Smith replied that it was not, the detective asked Mr. Smith for identification. Mr. Smith reached into his back pocket, retrieved his wallet and provided his New York State non-driver identification card to the detective.

17.     For several minutes Mr. Smith spoke to one or both of the detectives on West 116th Street. He was then directed back to the front of the Deli on Adam Clayton Powell Jr. Boulevard, where Mr. Wilson was already being detained by the police.

18. At 1:26 PM, during a search of Mr. Wilson's person, Detective Heredia removed Mr. Wilson's wallet from his pocket, searched inside of it and found a folded up dollar bill containing heroin.

19. Upon finding the heroin, Detective Heredia handcuffed and physically arrested Mr. Smith.

20. The first two detectives that approached Mr. Smith were also present during the arrest of Mr. Smith.

21. Despite having the opportunity to do so, neither of those officers took any action to prevent the arrest.

22. Mr. Smith was eventually placed in an NYPD prisoner van, in which he and Mr. Wilson were driven around for hours, handcuffed the entire time, before finally being brought to the 25th Precinct.

23. From the 25th Precinct, Mr. Smith was taken to Central Booking in lower Manhattan.

24. After several hours in Central Booking, Mr. Smith was arraigned on a felony complaint (the "Felony Complaint") charging him with the Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law § 220.39(1)), a class "B" felony. The time and place of occurrence is given as "May 29, 2014 at about 1:35 PM in front of 1902 7th Avenue."

25. The Felony Complaint was sworn to by Detective Hairston, based on information allegedly provided to him by UC 39 and Detective Heredia.

26. The Felony Complaint alleges, *inter alia*, that UC 39 informed Detective Hairston that he observed Mr. Smith and Mr. Wilson "engage in a hand to hand transaction" and that UC 39 "then observed [Mr. Smith] counting a sum of money."

27. Bail was set at Mr. Smith's arraignment in the amount of $5,000 and his case was adjourned until June 4, 2014 for grand jury action.

28. Following Mr. Smith's arraignment, an investigator for the Neighborhood Defender Service of Harlem, which was appointed to represent Mr. Smith, obtained video surveillance from the Deli which, according to the "time stamp" thereon, covered the period from 1:15 PM until 1:45 PM.

29. Mr. Smith's defense counsel proffered Mr. Wilson as a witness in the grand and provided the Assistant District Attorney handling the case in the grand jury with the surveillance video from the Deli.

30. One or more prosecutors viewed the video and also interviewed Mr. Wilson.

31. On information and belief, Mr. Smith's case was never presented to a grand jury. Instead the prosecutor agreed to Mr. Smith's release on his own recognizance pursuant to New York Criminal Procedure Law § 180.80.

32. Sometime thereafter, the charges against Mr. Smith were dismissed on motion of the New York County District Attorney's office

33. The video surveillance from the Deli shows the interaction of Mr. Smith and Mr. Wilson from 1:15 PM until 1:17 PM, when the two of them parted ways.

34. The video surveillance shows that Mr. Smith did not give or sell drugs or

anything else to Mr. Wilson during that time.

35. Mr. Smith did not give or sell drugs or anything else to Mr. Wilson at anytime on May 29, 2014.

36. The video surveillance does not show Mr. Smith counting any money in front of the Deli at any time after 1:15 PM.

37. Mr. Smith did not count his money in front of the Deli, or anywhere else on the street, at anytime on May 29, 2014.

38. Detective Hairston, Detective Heredia, UC 39 and/or John Doe prepared and signed police reports relating to Mr. Smith's arrest.

39. The statements contained him the Felony Complaint that UC 39 saw Mr. Smith engaging in the sale of drugs and counting his money on the street were false.

40. Detective Hairston, who was designated as the arresting officer, and who swore out the Felony Complaint, knew UC 39's statements were false.

41. Detective Hairston, Detective Heredia, UC 39 and/or John Doe provided their false reports as well false oral statements to one or more prosecutor from the New York County District Attorney's office.

42. Any information provided by to prosecutors by Detective Hairston, Heredia, UC 39 and/or John Doe implicating Mr. Smith in the sale of drugs was false and was of such a nature as to influence a jury to convict him.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C.§ 1983

43. All other paragraphs herein are incorporated by reference as though fully set forth.

44. The aforementioned acts deprived the plaintiff of the rights, privileges and immunities guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

45. The acts complained of were carried out by the defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

46. The acts complained of were carried out by the defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City and the NYPD, all under the supervision of ranking officers of said department.

47. The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

48. The defendants' conduct was the proximate cause of the injuries and damages sustained by the plaintiff.

### SECOND CAUSE OF ACTION
### False Arrest under 42 U.S.C. § 1983

49. All other paragraphs herein are incorporated by reference as though fully set

forth.

50. By intentionally confining, arresting, imprisoning and detaining the plaintiff without probable cause, privilege or consent, Detective Heredia and/or the other defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable seizures, false arrest and imprisonment.

### THIRD CAUSE OF ACTION
### Failure to Intervene under 42 U.S.C. § 1983

51. All other paragraphs herein are incorporated by reference as though fully set forth.

52. By their failure to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite the duty and the opportunity to do so, Detective Hairston, UC 39 and John Doe engaged under color of law in the violation of the plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION
### Malicious Prosecution under 42 U.S.C. § 1983

53. All other paragraphs herein are incorporated by reference as though fully set forth.

54. In initiating the criminal proceedings against the plaintiff with malice and without probable cause to believe the proceeding, which were terminated in the plaintiff's favor, could succeed, the defendants engaged under color of law in the violation of his rights

under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from malicious prosecution.

## FIFTH CAUSE OF ACTION
### Denial of Right to a Fair Trial under 42 U.S.C. § 1983

55. All other paragraphs herein are incorporated by reference as though fully set forth.

56. By providing false information and/or evidence to the New York County District Attorney's office that was likely to influence a jury's decision, the defendants engaged under color of law in the violation of the plaintiff's right to a fair trial under the Fifth and/or Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983.

WHEREFORE, the plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to the plaintiff against the defendants, jointly and severally;

3. Award the plaintiff reasonable costs, disbursements and attorneys fees; and

4. Grant any other relief the Court deems appropriate.

Dated: New York, New York
March 30, 2015

Respectfully submitted,

Darius Wadia, L.L.C.

By: Darius Wadia (Bar number DW8679)
*Attorney for the Plaintiff*
186 Joralemon Street, Suite 1202
Brooklyn, New York   11201
(212) 233-1212
dwadia@wadialaw.com